UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Attorney General, U.S. Department of Justice, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-3626 (RBW) |

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1. I am currently Acting Chief to the Voting Section ("Voting Section") within the Civil Rights Division of the United States Department of Justice ("DOJ"). I have personal knowledge of the facts set forth in this declaration. I make this declaration in support of Defendants' opposition to Plaintiffs' motion for a temporary restraining order.

2. For the 2026 general election, the Voting Section is conducting its election monitoring efforts in a similar manner and for similar purposes as in past election cycles going back decades.

3. The primary purpose of election monitoring is to ensure compliance with federal civil rights statutes we enforce. *See* 28 C.F.R. §§ 0.50 and 0.51. These statutes include the Voting Rights Act (52 U.S.C. §§ 10301–10314, 10501–10508, and 10701–10702), the National Voter Registration Act (52 U.S.C. § 20501 *et seq.*), the Uniformed and Overseas Citizens Absentee Voting Act (52 U.S.C. § 20301 *et seq.*), the Voting Accessibility for the

Elderly and Handicapped Act (52 U.S.C. § 20101 *et seq.*) the Civil Rights Act (52 U.S.C. §§ 10101, 20701 *et seq.*), the Help America Vote Act (52 U.S.C. § 20901 *et seq.*), and the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*).

4. In accordance with past practice, the Civil Rights Division ("CRT") provides comprehensive training for all monitors on federal and local laws, as well as best practices during monitoring. This comprehensive training—given nationwide to all monitors—includes a prohibition on the carrying of firearms, as well as the wearing of identifying clothing or accessories.

5. The prohibition on carrying firearms is further mentioned in both the Power Point used during state-specific training, and the "Dos and Don'ts" that is distributed to all monitors on Election Day.

6. An example of Power Point slides used in state-specific training, attached as Exhibit 1, is a true and correct copy of a Power Point slide that was used for two trainings given on October 30, 2026 for monitors in Anchorage, Alaska.

7. A true and accurate copy of the "Dos and Don'ts" to be distributed to election monitors on election day is attached as Exhibit 2.

8. In accordance with past practice, CRT has sought volunteers from within DOJ to serve as election monitors under CRT supervision.

9. There will be no Federal Bureau of Investigation or U.S. Immigration and Customs Enforcement employees, much less agents, serving as monitors. With the exception of one U.S. Customs and Border Protection (CBP) employee detailed to the Department of Justice, CRT is not aware of any other Department of Homeland Security (DHS) employees participating in CRT's monitoring of the 2026 general election. The CBP detailee is serving as

a monitor on behalf of CRT pursuant to the detail and not as a representative of DHS. Employees from the Federal Bureau of Prisons; the Bureau of Alcohol, Tobacco, Firearms and Explosives; and the Drug Enforcement Administration will serve as monitors. As with all monitors, those employees are prohibited from having any firearms with them, and they are prohibited from undertaking any action while monitoring other than normal CRT monitoring conduct such as observing the polling place and taking notes on their observations. Thus, while monitoring, the monitors will not be acting as "law enforcement personnel," a "law enforcement officer," or a "law enforcement agent" as commonly understood.

10. CRT's policy is to avoid engaging any sworn law enforcement personnel who are legally authorized to effectuate an arrest to act as monitors in a "law enforcement capacity." CRT is taking appropriate steps to ensure that the volunteers it engages from the Department's law enforcement components are not law enforcement officers.

11. The election monitor training—which is conducted by CRT in two sessions—is consistent with past practice. Monitors are instructed that their primary role is largely limited to observing, taking notes, and interviewing willing voters outside the polling place about their voting experience, where appropriate.

12. Moreover, the monitors have been instructed and trained to:

- not intrude or interfere in any way with either anyone voting or the election officials at the polling place;
- follow all rules of the state and jurisdiction to which the monitor is assigned;
- dress in business casual clothing;
- not have any insignia from their federal employment visible on their clothing;
- not talk with any voter inside the polling place;
- only talk to voters outside the polling place *after* the voter has cast his or her

ballot; and

- introduce themselves to the election officials upon arrival at the polling place and to have federal employment credentials with them to verify that they are federal employees if asked.

13. CRT does not track the position title of volunteers. Positions are clarified on an as-needed basis, to ensure volunteers are appropriate candidates (e.g., not sworn law enforcement personnel).

14. Limiting CRT from using "personnel from any of Defendant's federal law enforcement agencies"—as Plaintiff requests—would cause catastrophic damage to CRT's efforts to protect voting rights of Americans. Most or all monitors have made travel arrangements. Many have already departed on flights and arrived at hotels. Our limited personnel managing an already large operation would be redirected to last-minute changes that would put operational safety at risk.

I declare under the penalty of perjury that the above statements are true and correct.

Dated: November 2, 2026, at Washington, D.C.

Eric Neff