UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Attorney General, U.S. Department of Justice, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-3626 (RBW) |

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1. I am currently Acting Chief to the Voting Section ("Voting Section") within the Civil Rights Division ("CRT") of the United States Department of Justice ("DOJ"). I have personal knowledge of the facts set forth in this declaration. I make this second declaration in support of Defendants' opposition to Plaintiffs' motion for a temporary restraining order.

2. For the 2026 midterm election, CRT decided to increase its monitoring presence both in number of monitors and states monitored. CRT sought to send approximately 1,000 monitors spread across all 50 states. CRT sought monitors on a voluntary basis rather than assigning DOJ personnel to monitoring duty.

3. Previous monitoring efforts going back to at least the 2000 presidential election had never exceeded 600 monitors. In previous elections, CRT did not send monitors to all 50 states. A greater number of monitors was necessary to expand coverage to all 50 states. As a result of the need for more monitors, CRT concluded that more DOJ components were needed

to reach the necessary volunteer numbers.

4. The locations chosen were based primarily on the location of the United States Attorney Offices since that is where the DOJ monitors are located. Other locations were chosen based upon historical DOJ practices, such as monitoring where language access is an issue.

5. CRT's monitoring program is non-partisan. The monitors are primarily career employees.

6. Though there is no prohibition on using law enforcement for the monitoring program, CRT, in exercising its discretion, took reasonable steps to exclude certain sworn law enforcement officers from within DOJ from monitoring. This involved excluding certain volunteers that had clear indicia of being sworn law enforcement, excluding use of FBI personnel altogether, and sending ATF the volunteer list for cross-checking.

7. During cross-checking, CRT was alerted to five ATF volunteers that were sworn personnel. CRT excused them from their monitoring duties. DEA excluded sworn officers and agents from participating in CRT's monitoring program.

8. Monitors are instructed that they are serving the CRT monitoring effort in a volunteer monitoring capacity only. They are not told to act in any capacity related to any active workstreams they may have within DOJ as part of their regular employment. They have not been told of any situation that would be appropriate for them to effectuate an arrest.

9. Monitors are instructed—in emphasized fashion—that "We are just here to observe and gather information." Monitors are told that "We do not interfere[]" in election administration. Attached as Exhibit 3 is a true and correct copy of one slide shown in the training given to the Anchorage, AK monitoring team during two trainings given on October 30, 2026.

I declare under the penalty of perjury that the above statements are true and correct.

Dated: November 2, 2026, at Washington, D.C.

Eric Neff