UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et. al., Plaintiffs, | ) | |
| v. | ) | Civil Action No. 26-3626 (RBW) |
| TODD BLANCHE, in his official capacity as Attorney General of the U.S. Department of Justice, et. al., Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs, the National Association for the Advancement of Colored People ("NAACP"), as well as individuals Andre Miller, Nicholas Little, and Daniella Pierre, bring this civil action against the defendants, Todd Blanche, in his official capacity as Attorney General of the U.S. Department of Justice, Harmeet Dhillon, in her official capacity as Assistant Attorney General of the Civil Rights Division of the U.S. Department of Justice, and the Department of Justice (the "DOJ") pursuant to Section 11 of the Voting Rights Act ("VRA") (52 U.S.C. § 10307(b)) 42 U.S.C. § 1983, and the Administrative Procedure Act ("APA") on the basis that their challenged action is arbitrary and capricious and contrary to law under 5 U.S.C. § 706(2)(A), and alleging that the defendants' "plan to deploy 'election monitors' in the upcoming election" will "intimidat[e] voters, including [the p]laintiffs, Black voters and other voters of color. See Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 1, 3, 23–37, ECF No. 1. Currently pending before the Court is the plaintiffs' motion for a temporary

restraining order for an alleged violation of Section 11(b) of the VRA.[1] See generally Motion for Temporary Restraining Order ("Pl.'s Mot."), ECF No. 14. The plaintiff alleges that the defendants' decision to send personnel to election polling locations from the Bureau of Alcohol Tobacco Firearms and Explosives (the "ATF"); the Bureau of Prisons (the "BOP"); the Drug Enforcement Administration (the "DEA"); the U.S. Marshal Service (the "USMS"), as well as "[a]ny other agency personnel authorized in any capacity to conduct a criminal investigation or effectuate an arrest as part of its election monitoring program[,]" id. at 2 (hereinafter "DOJ's Poll Monitoring Program"), violates Section 11(b) of the VRA because the presence of these election monitors will "threaten[], intimidat[e], and coerc[e] voters and election officials and poll workers with criminal prosecution and undue legal jeopardy[,]" id. at 4. The defendants filed an opposition to the plaintiffs' motion for emergency relief. See generally Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Defs' Opp'n"), ECF No 18.[2] Upon careful consideration of the parties' submissions, the Court concludes for the following reasons that it must deny without prejudice the plaintiffs' motion.

## I. ANALYSIS

Temporary restraining orders are "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation and citation omitted). In determining whether to issue a temporary restraining order, the Court must apply the same standard that is applied to preliminary injunctions, see, e.g., Hall

[1] Although the plaintiffs' Complaint alleges a violation of the APA, their motion for emergency relief only seeks relief pursuant to the VRA.

[2] In addition to the filings already identified, the Court considered the following submissions in renderings its decision: (1) Memorandum In Support Of Plaintiffs' Emergency Motion For A Temporary Restraining Order And Preliminary Injunction ("Pls.' Mem."), ECF No. 14-1; (2) the Defendants' Supplemental Response ("Defs.' Supp."), ECF No. 19; and (3) the Plaintiffs' Response to Defendants' Supplemental Filings ("Pls.' Resp."), ECF No. 21.

v. Daschle, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009), which requires that "'[a] plaintiff seeking a preliminary injunction must establish: [(1)] that [the plaintiff] is likely to succeed on the merits, [(2)] that [the plaintiff] is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in [the plaintiff's] favor, and [(4)] that an injunction is in the public interest.'" Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)) (citation modified).

**A. Whether the Plaintiffs Have Demonstrated Standing**

"To seek injunctive relief, a plaintiff must show that [it] is under threat of suffering [an] 'injury in fact' that is concrete and particularized[.]" Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). Additionally, "the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Id. The defendants argue that the "[p]laintiffs cannot demonstrate to the Court – based on news clippings and federal officials' press statements, updates to the DOJ website, and DHS investigations – that" the plaintiffs in fact have standing. See Defs.' Opp'n at 6. But, that is not the proper inquiry the Court must ask itself. Instead, the Court "must be careful not to decide the questions on the merits for or against the plaintiff[s], and must therefore assume that on the merits the plaintiffs would be successful in their claims." Muir v. Navy Fed. Credit Union, 529 F.3d 1100, 1105 (D.C. Cir. 2008). Therefore, as it relates to the plaintiffs' standing, the Court finds that the plaintiffs have adequately alleged an injury-in-fact caused by the defendants' actions by declaring that at least one plaintiff is a registered voter, Pls.' Mem., Ex. B (Declaration Of Daniella Pierre) ("Pierre Decl.") ¶ 2, ECF No. 14-6, who "will vote in person for the upcoming November 3, 2026 midterm election[,]" id. ¶ 5, and who is "genuinely fearful of facing the law

enforcement agents that [the defendants] confirmed will be deployed by DOJ on Election Day to voting locations[,]" id. ¶ 9; see Hall v. Dist. of Columbia Bd. Of Elections, 141 F.4th 200, 208 (D.C. Cir. 2025) (explaining that "only one plaintiff need have standing for th[e] lawsuit to proceed"). The plaintiffs allege that they "are not comfortable voting if they are being watched by DOJ election monitors at a polling place under the present circumstances." Compl. ¶ 3. Additionally, the plaintiffs allege that their injury would be redressed by an order of this Court precluding the defendants from, inter alia, threatening to use and/or deploying "criminal prosecutors, DOJ law enforcement agents, and any other criminal enforcement personnel as DOJ election monitors during any election[.]" Id. at 34. In resolving this emergency motion, the Court concludes that the plaintiffs have adequately alleged that they do in fact have standing to proceed.

**B. Whether the Plaintiffs Have Demonstrated a Substantial Likelihood of Success on the Merits under the VRA**

Section 11(b) of the VRA provides that

> [n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote[.]

52 U.S.C. § 10307(b). "The statute applies regardless of whether defendants acted with the specific intent to intimidate, and regardless of whether the conduct 'successfully prevents a person from voting [or urging or aiding any person to vote or attempt to vote.]'" California Nurses Ass'n, et al. v. Mullin, et al., No. 26-cv-10680 (AMO), 2026 WL 3166149, at *7 (N.D. Cal. Oct. 21, 2026) (quoting Nat'l Coal. on Black Civic Participation v. Wohl, 512 F. Supp. 3d 500, 516 (S.D.N.Y. 2021)) (internal quotation marks omitted).

"The core analysis for a Section 11(b) claim, as with other anti-intimidation statutes, is whether the 'activities ha[ve] generated fear' that is objectively reasonable." Id. (quoting Walker v. City of Lakewood, 272 F. 3d 1114, 1129 n. 4 (9th Cir. 2001)). In making this determination, the Court cannot "view[ allegedly intimidating acts] in isolation" and must consider those acts "against the background of contemporaneous events . . . and the general climate prevailing there at the time," Nat'l Coalition on Black Civic Participation v. Wohl, 498 F. Supp. 3d 457, 482 (S.D.N.Y. 2020) (quoting United States v. McLeod, 385 F.2d 734, 740 (5th Cir. 1967)), in order to determine whether those acts would place an objective voter "in reasonable fear of harassment and interference with their right to vote," id. at 485 (quoting League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Interest Legal Found., No. 18-cv-00423, 2018 WL 3848404, at *3 (E.D. Va. Aug. 13, 2018)).

At the outset, the Court notes that it found the representations in the plaintiffs' briefing and exhibits to be concerning, and potentially indicative of a Section 11(b) violation, such that a reasonable individual might be intimidated from voting. Specifically, the plaintiffs represent in their motion that the defendants have deployed "over 1,000 Department of Justice personnel that will include criminal prosecutors, law enforcement agents, law enforcement investigators, and law enforcement personnel" to various states as part of their Poll Monitoring Program. Pls.' Mem. at 7. The plaintiffs also represent that "[o]n October 28, 2026, acting chief of the Voting Section in the Civil Rights Division, Eric Neff, executed a declaration attesting that "DOJ will deploy personnel from criminal law enforcement agencies within the Department, including the BOP, ATF, and DEA, to polling locations as election monitors." Id. at 8 (citing Decl. of Eric Neff ("Neff Decl.")), ECF No. 18-1 (emphasis omitted). According to the plaintiffs, the defendants' deployment of these agents, viewed in conjunction with the defendants' and other

members of this current Administration's public "statements targeting the voting process," Pls.' Mem. at 16, are impermissible because "[v]oters, including [the plaintffs,] are questioning whether they can approach polling places without encountering agents or being subjected to needless investigation and suspicion," id. at 9.

The Court also found concerning several of the declarations that the plaintiffs have submitted in support of their motion. Plaintiff Daniella Pierre, who is "of Haitian decent[,]" attests that she is "genuinely fearful of facing the law enforcement agents that . . . will be deployed by DOJ on Election Day to voting locations [because she is] . . . aware of many instances where federal law enforcement agents have question[ed], detained, and even arrest[ed] U.S. Citizens that they wrongly accuse of being immigrants based on their race and ethnicity." Pierre Decl. ¶ 9. Non-party Michael Burns attests that he is "fearful that as a person with newly restored voting rights, [he] will be a target for scrutiny from federal monitors and, now that the monitors are going to be personnel from criminal agencies such as the Bureau of Prisons, that [he is] at risk of being unlawfully detained and otherwise subjected to unwarranted and intensified criminal scrutiny." Pl.'s Mem. Ex. D (Declaration of Michael Burns) ¶ 12, ECF No. 14-8.

The plaintiffs also reference several concerning statements and actions that the defendants and members of the current Administration have made and taken in the months leading up to the election as contributing to this alleged intimidation. For example, the plaintiffs note that "[the d]efendant Dhillon stated on August 20, 2026, that monitors would be deployed to locations 'where there may be voter fraud issues that we've seen,'" Pl.'s Mem. at 16–17 (citation omitted), and that "[the d]efendant Dhillon suggested that DOJ 'election monitors' would ensure that no citizen's vote would be 'canceled out' by someone who 'should not be voting,'" id. at 17 (citation omitted). The plaintiffs also represent that the "defendants sent letters to election

officials in all 50 states threatening potential prosecution and 'up to a year in prison and a $1,000 fine' for failure to preserve election records," id. at 17, and that "[d]ozens of [U.S.] Attorney offices have issued press releases asserting they will seek out and criminally prosecute alleged 'election fraud,'" id. (citation omitted). For example, the plaintiffs state that the U.S. Attorney for the Southern District of Texas "threatened to 'hunt down' voters and election officials who violate the law." Id. at 17 (citation omitted). The plaintiffs also note that "[o]n October 23, two armed federal law enforcement agents reportedly showed up to the Registrar of Voters office in San Benito County, California, presented federal badges, and handed personnel an official demand letter from the DOJ," listing "33 individuals that they alleged were noncitizens improperly registered to vote and given vote-by-mail ballots" and "demand[ing] that those vote-by-mail ballots be sequestered." Id. at 7.

The Court notes, however, that many of its concerns were assuaged by the defendants' representations at the motion hearing. Specifically, counsel for the defendants represented that the election monitors

> should dress in business casual clothing and not wear visible insignia from their federal employment, that no monitor should carry a firearm. Monitors are additionally prohibited from intruding or interfering in any way with anyone voting. They're trained to follow all rules of the state and jurisdiction to which they're assigned. They're trained not to speak to voters inside a polling place. And they are trained to introduce themselves to any election officials upon arrival and have federal credentials available if requested.

Rough Transcript of November 2, 2026 Motion Hearing (21:7–17). Further the defendants noted that "sworn agents or officers from those particular agencies will be excluded from the poll monitoring program" and instead that the election monitors from the agencies would be clerical and administrative staff. Id. at 25:13–21.

Given these limitations, the Court cannot conclude, based on the current evidentiary record, that the plaintiffs have demonstrated a likelihood of success on the merits of their VRA claim. In his declaration, Eric Neff attests that the election monitors deployed to various states as part of DOJ's Poll Monitoring Program are "prohibit[ed from] . . . the carrying of firearms, as well as the wearing of identifying clothing or accessories." Neff Decl. ¶ 4. He represents that "[t]here will be no [FBI] or [ICE] employees, much less agents, serving as monitors," id. ¶ 6, and that they "are prohibited from undertaking any action while monitoring other than normal . . . monitoring conduct such as observing the polling place and taking notes on their observations," id. Further, in his latest declaration, he states that the DOJ "in exercising its discretion, took reasonable steps to exclude certain sworn law enforcement officers from within DOJ from monitoring. This involved excluding certain volunteers that had clear indicia of being sworn law enforcement . . . ." Second Declaration of Edward Neff ¶ 6, ECF No. 19-1.

In sum, the evidence indicates that the personnel that will work as election monitors will not be armed with firearms, not be in uniform, not carry any insignia of their law enforcement association, and will not be sworn law enforcement officials and therefore will not possess the power to arrest.[3] The Court is therefore unpersuaded by the plaintiffs' assertion that a person who is simply "project[ing a] command[ing] presence, scan[ning] crowds, and more"—without any outward indications of law enforcement authority—would generate objectively reasonable fear in a voter. Thus, the Court finds that in conjunction with the defendants' public statements regarding voter fraud and election integrity, the deployment of these individuals as election

[3] The Court understands that there are personnel from the BOP who may effectuate an arrest "for certain specified offenses committed on [BOP] property or in connection with incarceration or detained individuals." Defendants' Supplemental Motion at 2 n.2, ECF No. 19. For purposes of this Court's Order, the Court does not consider such personnel as law enforcement officers who have the authority to effectuate an arrect.

monitors would not place the average voter "in reasonable fear of harassment and interference with their right to vote." Nat'l Coalition on Black Civic Participation, 498 F. Supp. 3d at 482. Indeed, the facts in the current record are not as intimidating as those presented in other cases in which courts found a Section 11(b) violation. California Nurses Ass'n, et al, 2026 WL 3166149, at *8 (finding that the "publicization of the use of faulty data sources that sweep . . . U.S. citizens [into target lists of noncitizens improperly registered to vote], engagement in investigations based on this faulty data, and the . . . implementation of a social media campaign showing arrests and interactions with armed officials . . . create a reasonable fear of harm to those assisting and mobilizing voters"); Council on American-Islamic Relations—Minesota v. Atlas Aegis, LLC, 497 F. Supp. 3d 371, 378–79 (D. Minn. 2020) (finding that "[t]he presence of armed 'guards' at the polls with no connection to state government is certainly likely to intimidate voters").[4]

The Court emphasizes that its assessment of the plaintiffs' likelihood of success on the merits of their claim is based on the evidentiary record currently before the Court, and notes that

---

[4] As for irreparable harm, the Court cannot conclude that the plaintiffs meet the "high standard" the District of Columbia Circuit has set for irreparable injury. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006). The "injury alleged must be 'both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief.'" Church v. Biden, 573 F. Supp. 3d 118, 138 (D.D.C. 2021). "A plaintiff must demonstrate 'a clear and present need for extraordinary equitable relief to prevent harm.'" State v. Musk, 769 F. Supp. 3d 1, 5 (D.D.C. 2025) (quoting Church, 573 F. Supp. 3d at 138). Given the Court's finding that a reasonable voter would not be intimidated by the defendants' actions, considering that the officials who will be sent to election sites will not have the authority to arrest individuals and will not be displaying any outward insignia suggesting that they are law enforcement officials, the Court finds that the plaintiffs have failed to demonstrate that they will suffer irreparable harm, i.e., a reasonable voter would not be intimidated from voting simply from seeing a plain clothes non-law enforcement official volunteer at a election site. However, the Court's conclusion regarding irreparable harm would differ if the defendants were in fact planning to send law enforcement officials to monitor polling sites who had the authority to arrest individuals. The last factors for a temporary restraining order—the balance of the equities and whether a temporary restraining order would be in favor of the public interest—"merge [because] the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). On these points, the Court is mindful that "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." Wesberry v. Sanders, 376 U.S. 1, 17 (1964). Accordingly, the Court finds that these two factors likely weigh in favor of the plaintiffs, but because the plaintiffs are unlikely to succeed on the merits and are not able to demonstrate irreparable harm, the Court finds that the plaintiffs are not entitled to the issuance of a temporary restraining order.

its assessment of whether an objective voter would be intimidated by the defendants' actions might differ should the Court be presented with additional facts. Moreover, as indicated by the defendants' counsel at the motion hearing, the defendants do not object to an injunction that would require the DOJ to take reasonable efforts to exclude sworn officers from serving as polling monitors. While the Court does not think that such an injunction based on the defendants' representations is necessary, the Court will order that the defendants comply with their counsel's concession that they will take action to ensure that the monitors participating in the DOJ's Poll Monitoring Program are indeed administrative or clerical personnel and not law enforcement officials, will not be in uniform or display any other insignia indicating their affiliation with a federal agency, will not be armed with a firearm, and will not have the power to effectuate arrests. Further, the Court will further require that the defendants ensure that its election monitors abide by the following restrictions as indicated in the declaration of Eric Neff. These limitations include requiring election monitors to

> not intrude or interfere in any way with either anyone voting or the election officials at the polling place; follow all rules of the state and jurisdiction to which the monitor is assigned; dress in business casual clothing; not have any insignia from their federal employment visible on their clothing; not talk with any voter inside the polling place; only talk to voters outside the polling place after the voter has cast his or her ballot; and introduce themselves to the election officials upon arrival at the polling place and to have federal employment credentials with them to verify that they are federal employees if asked.

Neff Decl. ¶ 12.

Accordingly, it is hereby **ORDERED** that the plaintiffs' Motion for Temporary Restraining Order, ECF No. 14, is **DENIED WITHOUT PREJUDICE**.[5] It is further

---

[5] If the plaintiff believes that on November 3, 2026, the defendants have violated this Court's Order, acted in a manner inconsistent with their representations at the motion hearing, or have violated any of the limitations that the defendants allege have been adopted or agreed will be taken during today's hearing, see Neff Decl. ¶ 12, the plaintiffs shall promptly file a notice with the Court to apprise the Court of the nature of the violation, and the Court will take immediate action to address the alleged violation.

**ORDERED** that the defendants shall provide the Court with a status report as to how they confirmed that none of the election monitors participating in the DOJ's Poll Monitoring Program on November 3, 2026 are in fact law enforcement officials and therefore do not have the power to effectuate arrests, on or before November 3, 2026 at 7:00 a.m. Eastern Standard Time.

**SO ORDERED** this 2nd day of November, 2026.

REGGIE B. WALTON
United States District Judge